# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \*

MATT RUNNING SHIELD, A/K/A
ROYAL ROCKEFELLER,

          PLAINTIFF,

VS.

JOAN FABIAN, COMMISSIONER OF CORR.;
TERRY CARLSON, ASST. COMM.; WARDEN JESSICA
SYMMES-BENSON; ASST. WARDEN KENT GRAWLIENARD;
PROGRAM DIRECTOR Lcie STEVENSON; MIKE GREEN, DISCIPLINE
UNIT; VINCE KRENZ, OSI; JEFF DANSKY, OSI; L.T. KEVIN
SCOTT MONIO; SGT. JEFF BLY; C.O. JASON SMITH and
C.O. JAMES LANGE,

          DEFENDANT'S.

**3RD** AMENDED COMPLAINT
<u>JURY TRIAL DEMANDED</u>

CIV. NO. 10-800 {JNE-LIB}

\* \* \* \* \* \* \* \* \*

# PRELIMINARY STATEMENT

This is a civil rights action filed by Matt Runningshield, A/K/A Royal Rockefeller, for damages and injunctive relief under 42 U.S.C. § 1983, alleging Attempted Assault, illegally opening incoming and outgoing legal mail outside of the present's of the inmate, unreasonable strip/body searches and other claim's stated in the complaint as joinder claim's, due to it relates back to the initial filed complaint. All in violation of the Eighth and Fourteenth Amendment to the constitution, and an unlawful conviction in a Due process hearing in violation of the 5TH and Due process clause of the Fourteenth Amendment to the U.S. constitution, and denial of access to legal

work, so that the plaintiff could file meaningful paper's and have access to the court in violation of the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution, and also denial of access to legalwork, when Defendant came into plaintiff's cell and took all of the plaintiff's legalwork, in result, the plaintiff missed a deadline and still continue to take and deny plaintiff access to his legal work, in retaliation against the plaintiff.

Also, plaintiff alleges that the defendant destroyed evidence that their were under legal obligation to preserve, and defendant's acted in bad faith for failure to preserve potentially useful evidence violate's the due process clause of the Fourteenth Amendment to the U.S. Constitution.

The plaintiff also alleges the tort's of Attempted Assault and battery and negligence, along with all other claim's stated within.

## Jurisdiction

1. This court has jurisdiction over the plaintiff's claim's pursuant to 28 U.S.C. § 1331, and pursuant to 28 U.S.C. § 1343 (a)(3) and (a)(4). This court has supplemental jurisdiction of the Minnesota State law claims pursuant to 28 U.S.C. § 1367

## VENUE

2. Venue in this court is proper pursuant to

28 U.S.C. § 1391 (a)(2) and (b)(2) because giving rise to the claim's occurred within this district. The Court may also concider 28 U.S.C. § 1402 (b) and 28 U.S.C. § 1404 (a)

# PARTIES

3. The plaintiff Matt Runningshield aka Royal Rockefeller was incarcerated at mcf. Oak Park Weight's during the event's described in this complaint.

4. Defendant's, Joan Fabian, comm. of corr.; Terry carlson, Asst. conn.; warden Jessica Symmes Benson,; Asst. warden kent Grandlienard.; Prog. Dir. Lcie Stevenson,; vince krenz, osi; Jeff Donsky, osi. Are all employed at mcf. Oak Park Weight's. They are Sued in their individual and official capacities.

5. Defendant's, Mike Green, Discipline unit.; L.T. kevin Scott Monio; SGT. Jeff Bly.; C.O. Jason Smith and C.O. James Lange. Are Sued in their individual capacities, and are employed at mcf. Oak Park Weight's.

6. Defendants, Fabian, carlson, Symmes Benson, Grandlienard, Stevenson, krenz and Donskh, are All in charge of the Supervision of and discipline of all correctional staff as well as investigation. All are Sued in their individual and official capacities.

7. Defendant Green, is the discipline unit and he is in charge and responsible for conducting disciplinary hearing's for offender's accused of breaking and violating prison rule's. He is Sued

in his individual capacity.

8. Defendant, Jessica Symmes Benson, is the Warden of Mcf. Oak Park Heights and is responsible for ~~monitoring~~ reviewing all administrative appeals of disciplinary charge's filed by Mcf. Oak Park Heights offenders. She is sued in her individual and official capacities.

9. Defendant's, Krenz and Dansky are Office of Special investigation and are in charge of investigating Staff Misconduct at Mcf. Oak Park Heights. They are sued in their individual and official capacities.

10. Defendant, Carlson, is a Asst. Comm. of the Mn. Dept. of Corr. and is responsible for reviewing Mn. Doc offenders appeal Grievances, filed by Mn. Doc offenders. She is sued in her individual and official capacities.

11. Defendant Green, is also the Mail room Supervisor and is responsible for All of offenders incoming and outgoing personal and legal mail of Mcf. Oak Park Heights. He is sued in his individual capacity, and official capacity.

12. At all relevant times, all Defendants acted and continue to act, under the color of State law, and within the scope of their employment to this complaint.

## EXHAUSTION

13. The plaintiff has exhausted such administrative remedies to all claims in the complaint, as were available to him.
The hearing appeal's, informal and formal Grievances and official reply's were filed with the original complaint.

13. The Plaintiff has filed a privious law suit civ. File. NO. 08-133 {JMR·RLE}

14. The out come of the suit, was both parties settled out of court, without court judgement.

## STATEMENT OF FACTS

15. On January. 21st, 2010, received his canteen and the plaintiff ordered OTC medication, in order to receive the OTC meds, plaintiff first has to be strip/body searched and his cell shaken down.

16. During this search by 3rd watch Sgt. Blu, and C.O. Jason Smith, defendants were in the plaintiff cell a long time, later on that same evening the plaintiff discovered that his toothbrush had been damaged, the brush was flat with dirt and lint in the brush and appeared to have been scrubbed on the floor hard.

17. At about 11:00 p.m that same evening, the plaintiff discovered that his hygiene products had been tampered with, his shampoo's were

discolored and lotion bottle's were watery.

18. When Bluh, Smith and Lange came buh to do lock
check's, Lange started laughing and Bluh stated
"what, whut chou laughing" and Bluh and Smith
started laughing too.

19. That night the plaintiff wrote a letter about what
occured and the next day, asked to see MMU
staff Jeff Erickson, he was not in, so, MMU
staff Tammuh Lisowh, came to see the plaintiff,
I explained whuh I wanted to See her
and showed her the letter that I wrote.
Then she tried to turn it around on me,
I asked her to report it to osi, she said no,
but She'll put the letter in the mailbox to osi,
I told her no, that I wanted the letter back
due to that I did not trust her because
She's an ex. correctional officer and her
husband is Sgt. A. Lisowh of 2nd watch in
ACU.
She stated o.k., but it's uhour last chance,
then I'm gone, I told her to please leave.

20. As Tammuh Lisowh left my cell, a C.O. was hiding
around the corner buh the name of C.O.
Kerscherter, he asked her as she walked away
from muh cell, "So what did he want?" she
stated, "he wanted me to give a letter to osi
but I wouldn't do it.

21. As they left a few minutes later, L.T. Monio
came to muh cell to talk to me, I let him

read the letter and he took it and said he
has to go talk to some people, I showed
him my toothbrush and hygiene products and
he said well, I can't do nothing about your
hygiene stuff, but I can get you a new
toothbrush," he left and C.O. kerschner came
to exchange my toothbrush, he did not
preserve it as evidence, he threw it away.

22. On January 21st, 2010 The plaintiff wrote a
letter to Marsha Eldot Devine, MN. ASST. ATTY.
Gen, stating that the plaintiff would like a
independant investagation done by Deb Wienard
Deputy Director of office of special investigation's,
at DOC central office, the plaintiff also
sent ASST. ATTY. Gen. Marsha Eldot Devine
personal document's for her to copy that
she, to date, has NOT returned to the
plaintiff. The plaintiff did NOT receive a
response back from the ASST. ATTY. Gen.
either in regard's to the issue of the claim.

23. On 1-25-2010, Jeff Ericson of MN.U came to
my cell to see me and the plaintiff showed
him the discolored hygiene product's and
watery lotion bottle's and told him what time
I found them, at 11 p.m., he said how did
you find out the time, I said, I got a
flu shot that day too, and said to the C.O.
in the bubble, that I was having chest pain's
and I was supposed to document the exact
time of any side affect's, so the C.O. told
me what time it was, otherwise the C.O. wouldn't

of told me what time it was, Jeff Erickson laughed and said, "That's pretty clever".

24. On 1·25·2010, Defendant's Krenz and Dansky came to speak with the plaintiff, Dansky stated that he would not be investigating, that he was leaving it up to L.T. Monio.

25. Plaintiff stated to Dansky, so you're willing to accept responsibility, reliability and culpability for all this?, Dansky stated, yeah and that's coming from the horse's mouth, the plaintiff stated, who's the horse's mouth?, Dansky replied "me" and both Dansky and Krenz walked away, before they did the plaintiff also told Dansky about Doc policy 107.005 f OSI, criminal investigation's) which Dansky ignored.

26. During these events the plaintiff did resist or threaten the C.O.'s or staff in any fashion or break any prison rules.

27. Defendant's Blu, Smith, Lange, Monio have repeatedly engaged in excessive force against offenders in the past, and have had numerous grievance's filed on their conduct, and also written fabricated reports on offenders in the past, and even got offenders new street charges, See: STATE VS. SWEENEY, 82-CR-5096

28. Defendant's, Stevenson, Grandlienard and Summres·Benson have been placed on notice of the abusive conduct of

defendants, Bluh, Smith and Lange by a number of
'informal' and formal Grievance's over many, month's, but
has failed to take disciplinary action against them or
otherwise to control their conduct.

Denial of Due Process

29. On 1/29/2010, plaintiff was given a report by
Defendant Green, and Plaintiff was charged with
rule violation #240 Lying and misrepresenting,
defendant Green offered the plaintiff a concurrent
segregation sentence, which the plaintiff refused,
mike Green also stated to plaintiff, "Nothing
happend, you're guilty take the deal".
the plaintiff still refused.

30. The plaintiff tried to show defendant Green his
tampered hygiene product's and Green refused
to look at them, nor did Green gather them
and test them as evidence.

31. The plaintiff wrote the defendant Green numorus
kite's requesting that the plaintiff review the
video tape to prepare for his hearing, to gather
evidence, and to withdrawl the report due to
the report being inaccurate and fabricated,
defendant Green denied all reques't's.

31. On 2/2/2010 the plaintiff received a ~~motion~~
~~~~~ disciplinary hearing before defendant
Green.

32. At the hearing, the plaintiff told his side of the event's

and that the report that defendant Monio had
written was inaccurate and fabricated and was
Not what the plaintiff stated in his letter.

33. At the Conclusion of the hearing, the hearing
officer Mike Green Convicted the plaintiff of the
inaccurate fabricated report, Stating that
regardless of the inaccuracies, Green still found
a preponderance of evidence to find the plaintiff
Guilty of the charge #240 Lying and Misrepresentation
and made imposed a sentence of 21 Day's LOP

34. Pursuant to offender discipline regulation of the
MN. DOC. Rule #240. Lying and Misrepresentation
[A] No offender shall knowingly make a false written or
oral statement to a staff member which directly
affects the Safety, Security, or order of the facility.
No offender shall knowingly falsify or alter a report,
make a false written or oral statement in order to
mislead another, misrepresent a fact, or misappropriate
Something.
[B.] No offender shall knowingly make a false
written or oral statement about a staff member. If an
offender makes a complaint that is protected
under state or federal law about a staff member
the facility must possess evidence corroborating
the staff member's report in order to charge the
offender under this rule.

35. The hearing officer and defendant Green, did not
abide by this regulation, the mandatory language
which also violated the plaintiff's protected
liberty interests.

Protected liberty interests / mandatory language

36. Mandatory language in state, federal statute, regulation, policy and directive's according to "substantive predicates" and "substantive limitations" on official discretion, under certain specified circumstances, officials must do something or must refrain from doing it, it creates a liberty or property interest.

The defendants capacities in individual or official, does not give the defendants water shed power's to change state statute or regulation's on the whimiscal due to the fact that they are not "LAW MAKER'S or POLICY MAKER'S" and must comply with all law's of the united states and of any state and local jurisdiction.

Word's like "Shall, will, must and may" can be sufficiently mandatory to create a liberty interst.

37. Pursuant to prison procedure, the plaintiff filed an administrative appeal with defendant Symmes-Benson, pointing out that he was convicted of an inaccurate report, rule #240 was not followed, evidence was not gathered nor tested that would lead to a true finding factor of guilt and preponderance of the evidence, therefore there was lack of evidence supporting the charge and conviction of rule #240.

38. Defendant Symmes-Benson denied the plaintiff's appeal.

# CAUSES OF ACTION
### FIRST CLAIM FOR RELIEF
42 U.S.C. § 1983 against DEFENDANTS, BLIH, SMITH,

AND LANGE.

39. Defendants Bly, Smith and LANGE engaged in a deliberate and outrageous act of Attempted Assault, and defendant Lange knew about the outrageous act, but did nothing to intervene nor stop or report or prevent the outrageous act, but rather conspired to cover up such act's that shock's the conscience in violation of the plaintiff's rights under the Eighth and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

40. Defendant's Bly, Smith and Lange misused and abused the official power granted to them by the state in the performance of their official duties thereby causing the harm to the plaintiff.

41. Defendants Bly, Smith and Lange engaged in conduct with malice, reckless, callous or sadistic indifference to the constitutional and statutory rights of the plaintiff.

Second Claim for Relief
42 U.S.C. § 1983 against Defendant Manio

42. Defendant Manio engaged in a deliberate and outrageous act of conspiracy to cover up the Attempted Assault during his investigation of the incident, which he did not investigate until a week later to review the video tape of the camera that's in the plaintiff's cell, the defendant also engaged in conduct that shocks the conscience in violation of the plaintiff's rights under the Fourteenth

Amendment to the U.S. Constitution when Mario wrote an inaccurate and fabricated report charging the plaintiff with rule violation # 240. Lying and Misrepresenting. Also, in violation of 42 U.S.C. § 1983.

43. Defendant Mario misused and abused the official power granted to him by the State in the performance of his duties thereby causing the harm to the plaintiff.

44. Defendant Mario engaged in conduct with malice, reckless, callous or sadistic indifference to the constitutional and statutory rights of the plaintiff.

3RD Claim for Relief

42 U.S.C. § 1983 against Defendants, DANSKY, KRENZ, Stevenson, Grandlienard, Skinnes Benson, Carlson, Fabian.

45. Defendants, Dansky, krenz, Stevenson, Grandlienard, Skinnes Benson, Carlson and Fabian knew that their had a legal obligation to protect the plaintiff from attempted assault, cruel and unusual punishment and Denial of Due process and knew that their actions and ommissions created a substantial risk of serious injury to the plaintiff, with deliberate indifference to the plaintiff's personal safety, and U.S. constitutional rights. Defendants failed to protect him from substantial risk of serious harm in violation of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution and

42 U.S.C. § 1983.

46. The deprivations of the plaintiff's rights described herein constitute a risk of harm so grave that it violated Contemporary Standards of decency.

FOURTH CLAIM FOR RELIEF
42 U.S.C. § 1983 against Defendant Green and Symmes-Benson.

47. The defendant Green refusing to gather evidence, test the tampered hygiene products, and finding the plaintiff Guilty of a inaccurate and fabricated report with no evidence to support other than a inaccurate report written by defendant Monio with no fact finder, the defendants findings of Guilty with a preponderance of evidence, was an inadequate findings, with no true fact finder to support), Constituted a deliberate indifference and further denied the plaintiff the due process of law in Violation of the Fourteenth Amendment to the U.S. Constitution.

48. The actions of defendant Symmes-Benson in refusing to overturn the plaintiff's disciplinary conviction, despite her knowledge of the above described due process violations, Constituted deliberate indifference and further denied the plaintiff the due process of law, in violation of the Fourteenth Amendment to the U.S. Constitution.

Fifth Claim for relief
Outrageous conduct/Intentional Infliction of Emotional Distress Against Bliz and Smith.

49. Defendants Bly and Smith, acting within the scope of their agency, recklessly and with the intention of causing the plaintiff severe emotional distress, engaged in extreme and outrageous conduct by Attempting to Assault and harrassing the plaintiff and by promoting a threatening and unduly hostile and antagonistic environment.

50. AS A direct and proximate result of Defendants acts, which were so outrageous in character and extreme in degree as to be utterly intolerable in a civilized community, the plaintiff suffered severe emotional distress and was injured and damaged thereby.

51. Defendants Bly and Smith engaged in conduct with malice and reckless or callous and sadistic indifference to the rights of the plaintiff.

52. The action's of defendant's Bly, Smith and Lange in the act of a unknown substance or chemical, without need or provocation, or in failing to intervene to prevent the misuse of force constituted tort of Attempted Assault and battery under the tort law of Minn. Stat. § 3.736, subd. G {July 1, 2009}

53. The failure of Defendant's, Dansky; Krenz; Stevenson; Grandliendrd; Symmes-Benson; Carlson; Fabian to take disciplinary or other action to curb the known pattern of physical abuse, harrassment of inmate's by defendant's Bly, Smith, Lange, Manio and Green constituted deliberate indifference, and contributed to and proximately caused the above described violation of Eighth AND Fourteenth

Amendment rights and Attempted Assault and
battery.

### SIXTH CLAIM FOR RELIEF
Unlawful strip/body search against defendants
Bly And Smith AND Monic

54. Defendants Bly and Smith unreasonably but willfully
strip/Body searching the plaintiff on 1.21.2010
on the evening of 3rd watch, without the plaintiffs
consent.

55. As a direct and proximate result of the actions of
Defendants Bly and Smith, the plaintiff was injured
and suffered damages.

56. Defendants Bly and Smith engaged in conduct with
malice and reckless or callous and sadistic
indifference to the rights of the plaintiff.

57. The plaintiff, though incarcerated, still retains a
expectation of privacy on "His person", therefore,
strip/body searches must be reasonable and
not unreasonable.

58. Strip/body searches are only reserved for the
highest security measure's, such as after
visits, entering the institution and segregation.
Strip/body searches not related to legitimate
security needs or are designed to harass are
unconstitutional under the 4th and 8th Amendments.

59. Defendant Monic, on 7.15.2009 was the author

of a memo. stating that OTC med.'s will not be given out on 1ST watch, it did not state anything about being strip searched before receiving OTC med.'s., it is unwritten policy, that offender's must be strip searched.

60. Causation may include higher level supervisor's who make policies or practies and lower level staff can be held liable for acquiescing in dangerous practice's, and Supervisor's can be held liable for originating them.

### SEVENTH CLAIM FOR RELIEF

61. Since the filing of the complaint, the plaintiff has discovered that the defendant's destroyed the video tape used as evidence to convict the plaintiff in the plaintiffs disciplinary hearing that the defendant's were under legal obligation to preserve as evidence, the defendants acted in bad faith for failure to preserve potentially useful evidence, violates the due process clause of the Fourteenth Amendment to the constitution.

62. Defendants have a history of destroying evidence, such as video tape's, see; State v. Sweeney, 82·CR·5096.

63. Since the filing of the original complaint, the plaintiff has discovered that the defendants Answer to the plaintiff's original complaint, the defendants have misled, perjured and impeached themself's

to the court, in Paragraph # 8. stating, "Defendants admit only to the extent that plaintiff filed a prior lawsuit in which he was paid a settlement, Defendants continue to deny the factual allegations of the prior lawsuit and have not and do not admit liability related to Plaintiff's prior lawsuit."

64. In a memo, dated April 21, 2009 from Warden John King of mcf' Stillwater States " I believe the System has run it's course and the investigation was conducted thoroughly with appropriate actions taken".

65. Action's were taken on the last defendant's and Warden John King was Also a defendant too, in the body of the memo, admit's to liability.

66. The truthfulness of the allegations in the Defendants answer, is that that the defendants counsel Jackson Evans filed it with the court, and also, served a copy upon the plaintiff on May, 10, 2010 stating that he was the counsel for the defendant's. The Certificate of Service and Notice of Electronic filing. All mailed on July, 7th 2010 to the plaintiff.

## EIGHTH CLAIM FOR RELIEF
42 U.S.C. § 1983 CLAIM against Defendant Summes, Benson, and Carlson.

67. Defendant's Summes, Benson and Carlson both denied plaintiff's informal, formal and appeal

grievances to access his legal work; that he was being denied to, See; Appointment of counsel Doc. 9, Filed 4-19-2010

68. Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid.

69. Prisoners have a constitutional right of access to the courts, under the the due process clause, the Equal Protection clause, the 1ST Amendment and the privileges and immunities clause of Article 4 of the Constitution as the bases for the right.

70. Defendant's Summres, Benson and Carlson acting in the color of State law, and within their scope of their duties, violated the plaintiffs U.S. Constitutional rights and 42 U.S.C. § 1983.

71. Defendant's Summres, Benson and Carlson misused and abused the official power granted to them by the State in the performance of their duties thereby causing the harm to the plaintiff.

72. Defendant's Summres, Benson and Carlson engaged in conduct with Malice and reckless or callous and Sadistic indifference to the constitutional and Statutory rights of the plaintiff.

73. Defendants Summres, Benson and Carlson knew that they had a legal obligation to protect the plaintiff

from Due Process Violations, and knew that their
actions and omissions created a substantial risk
of serious injury to the plaintiff. With deliberate
indifference to the plaintiff rights, Defendants
failed to protect him from harm or substantial
risk under the First, Fourteenth, Equal Protection and
the privileges and immunities clauses of Article 4
of the U.S. Constitution, and 42 U.S.C. § 1983.

74. The deprivations of the plaintiffs rights discribed
herein constitute a risk of harm so grave that
it violated contemporary standards of decency.

## RELIEF REQUESTED

WHEREFORE, plaintiff requests the following
relief from this court:

A. Issue a declaratory judgment stating that:
1. The ATTEMPTED assault by defendants Bly and
Smith violated the plaintiff's rights under the
Eighth and Fourteenth Amendments to the U.S
Constitution and Attempted assault and battery
under state law;

2. Defendants, Stevenson, Monio, Krenz, Dansky,
Grandlienard, Summes, Benson, Carlson and Fabian's
failure to take action to curb the physical abuse and
harassment of prisoners violated the plaintiff's
rights under the 8th AND 14th Amendment to the
U.S. Constitution and constituted and Attempted
assault and battery under state law.

B. Issue an injuction to order defendants Fabian, and Symmes·Benson et al. to:

1. Immediately arrange for the plaintiff's hygiene and lotion products to be tested by a lab chemist (who is an independent lab testing techician) of chemicals.

2. Carry out without delay the testing such lab techician.

3. Stop unlawful, unreasonable body/strip searches for "OTC Med.'s".

D. Award compensation damages in the following amounts:

1. $400,000°° against defendant Blk for the physical and emotional injuries sustained as a result of the attempted assault against the plaintiff.

2. $400,000°° against defendant Smith for the physical and emotional injuries sustained as a result of the attempted assault against the plaintiff.

3. $1,500,000°° jointly and severally against all defendants; FABIAN, CARLSON, SYMMES·BENSON, Grandlienard, Stevenson, Green, Krenz, DANSKU, Munio, Blk, SMITH and LANGE, for all claims arising out of this 3RD Amended complaint.

E. Award punitive damages in the following amounts:

1. $50,000°° against both defendants Blk and Smith.

2. $35,000°° against defendant LANGE.

3, $25,000⁰⁰ against defendants Summes, Benson and Green,

4, The plaintiff request's his filing fee be reimburst and All costs incurred in this civil action,

F, Grant such further relief as the court may deem just and proper,

## DEMAND FOR JURY TRIAL

plaintiff requests a trial by Jury on all issues triable by a jury,

DATE : 9·20·2010

Matt Running shield
M· R· S· A/K/A
Royal Rockefeller
R·R·

Mat Running shield #189198
5329 Osgood Ave. N.
Stillwater, MN. 55082-1117



# Minnesota Correctional Facility – Stillwater
# MEMORANDUM

MINNESOTA DEPARTMENT OF CORRECTIONS

DATE:      April 21, 2009

TO   :     Matthew Runningshield, #189198, MCF-RC

FROM:      John King - Warden

SUBJ:      **Letter to the Commissioner**

---

I was asked to respond for the Commissioner from your letter dated March 30, 2009. The issue that you are addressing is from August 2007. There has been an investigation completed on this matter as well as a settlement with you and the State of Minnesota. We will not reopen an investigation on this matter, nor will we make any adjustments to your discipline record with regard to the incident. I believe the system has run it's course and the investigation was conducted thoroughly with appropriate actions taken. To my knowledge there was nothing stated in the settlement to indicate that any further action needed to be taken by the facility.

Your request for any change to the discipline record or reinstatement of Extended Incarceration is denied. You were advised of that through the discipline process up to and including an appeal.

As to the matter of a transfer, it appears you are working through that process with the appropriate staff at the facility. It would not be my intent to get involved in your transfer request from your current facility, MCF-Rush City to MCF-Oak Park Heights. That request would be handled between those two facilities.

JK:mt
c:     David Crist, Assistant Commissioner-Facilities Division
       file

## Minnesota Department of Corrections
### OFFENDER KITE FORM  7/26/10 OF 2

Offenders are encouraged to communicate with staff at all levels, but it is expected that the chain of command will be used. Your kite should be directed to the staff who can best answer your question. If you send a kite requiring an answer to the wrong staff, it will be returned to you. Kites are to be used for offender to staff correspondence only. If your kite is not specific, it will be returned for additional information. If you want your kite reviewed further up the chain of command, you must attach all previous kites to show the previous responses.

To: ~~Lcie Stevenson / P.D~~    Date: 7-23-2010

To: ~~From:~~ M. Running, Shield   153   OID: 189198

Facility/Unit ACU   Room/Cell ~~138~~   Casemanager _____

**Other staff you have contacted regarding this issue and the outcome/decision (attach responses):**

Informal Grievance:

Issue: Per your memo dated 7/22/2010, and first off, you did not follow Doc Policy Directive 303.101, kites/communication and respond within 5 working days, which is why I went over your head, up the chain of command, your response is over a month late, regardless of the issue you are Directed to respond within 5 working day's just like everybody else per Doc policy 303.101. And as far as your claim of the tool for harassment, this memo that was SUPPOSEDLY issued on 3-7-08 by L.T. Kevin Monio, he wasn't even the L.T. then, HANSON was, and how are offender's or Me I should say, misusing the bedding when I am using it for it's "intended purpose" TO SLEEP, and it's on my mattress, not on the floor, hanging up or anywhere else, L.T. MONIO DID NOT

Response from: Lou Stevenson, Program Director   Date: 8/3/10

Mr. Runningshield the policy says that "Whenever possible, staff will respond within five working days from receipt of the kite. Sometimes the issue we are trying to address may take more than 5 days to gather enough information to give you the most informed response possible. At any rate, in this matter you feeling yourself completely covered whither you are/isn't, Its been addressed, so I see no reason to speak to the matter any further.

MINNCOR industries

Pg. 2 of 2  7-23-2010
√ Informal Grievance to Lieu Stevenson

issue me this memo in my last grievance, and it's the
the orginal Memo. I signed with his ink still on the page.
This Memo was NOT issued on 3-7-08, to be enforced 24
hrs. a day? Movement on each security round? So when am I
supposed to sleep? and to take the bedding away for 24 hrs.?
Can you conceptualize of how inane that is?, that state's a 8ᵗʰ
amendment claim right there, and now you have these cullieport door's
open at night, the c.o's on 1ˢᵗ watch come in and wake people up,
pretend to cough, turn their radio's up, talk on the intercom's to
each other, stomp their feet, is this why the door's are open now?
there's no proper ventalation back here, then turn the air in
the cell's way down or have it turned way down, so offender's
can't breath, don't you know you guy's will kill somebody
playing around like that?, people who have poor health or
weak heart's or respatory problem's such as asthma ect.
I was one of the 1ˢᵗ people they put in this unit when it first
opened up FEB. 4ᵗʰ 2003, if the not first, and did 39 month's
back here, NEVER Did they play with the vent's like this,
you guy's sit up there and try to come up with way's to make
an hostile antagonistic environment, and when you
guy's do manage to kill someone, I've got it All recorded,
the FBI's already been through here once.
You've got a legal obligation, one where acts of
omission are the same as COMMISSION and are actionable just
the same, these c.o's Nueihring and them back here all trying to
retaliate, I hope you and you have them refamiliar yourself's
with DOC policies, 202.055, 103.220, 103.228, 103.225, 107.100
AS Well, if you're so concerned with "My Safety and
Well being," that's part of it.
The conduct of the ACU staff and LT. go unchecked,
you are liable as well.

As you stated, this has been
an issue fully Grieved and exhausted
and now in FED. COURT'S. THAT'S WHY